# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**BRENDAN A. HURSON**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
**BALTIMORE, MARYLAND 21201**
**(410) 962-0782**
MDD_BAHChambers@mdd.uscourts.gov

January 26, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:     *Christopher V. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
        Civil No. 22-828-BAH

Dear Counsel:

On April 6, 2022, Plaintiff Christopher V. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case, ECF 8, the parties' cross-motions for summary judgment, ECFs 13 and 15, and Plaintiff's response, ECF 16.[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on July 24, 2018, alleging a disability onset of July 19, 2018. Tr. 10, 191–97. Plaintiff's claim was denied initially and on reconsideration. Tr. 85–91. On June 7, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 29–57. Following the hearing, on June 21, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 7–19. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] The Court acknowledges Standing Order 2022-04 amending the Court's procedures regarding Social Security appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, the nomenclature of parties' filings has changed to "briefs" from "motions for summary judgment." Because the motions in this case were filed prior to the effective date of the Standing Order, the Court will refer to them as motions for summary judgment.

[2] 42 U.S.C. §§ 301 et seq.

*Christopher V. v. Kijakazi*
Civil No. 22-828-BAH
January 26, 2023
Page 2

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 19, 2018, the alleged onset date . . . ." Tr. 12. At step two, the ALJ found that Plaintiff suffered from the severe impairments of:

> ruptured globe of left eye, displacement of intraocular lens, subluxed traumatic cataract, full thickness corneal laceration, and retinal detachment with retinal tears; status-post left globe rupture repair; status-post left retinal detachment repair by scleral buckle/pars plana vitrectomy/ plana lensectomy; status-post left keratoplasty with corneal transplant for perforated fungal ulcer/infection/keratitis/corneal melt; left exotropia/astigmatism/corneal transplant/aphakia/vision loss/dry eyes; and status-post left upper lid punctual plug placement.

*Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "hereditary hemochromatosis, status-post hernia repair, degenerative disc disease, status-post left sixth, seventh, and ninth rib fractures, right lung nodule, emphysema, sliding hernia, contusion of left chest wall, pigment cirrhosis, dilated cardiomyopathy, and colonic tubular adenomas." Tr. 12–13. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 13. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) EXCEPT: claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to wetness and excessive vibration; must avoid moderate exposure to hazardous moving machinery and unprotected heights; and is limited to occupations requiring no more than frequent near acuity, far acuity, peripheral acuity, and depth perception.

Tr. 14. The ALJ determined that Plaintiff was unable to perform past relevant work as an auto body technician/repairer but could perform other jobs that existed in significant numbers in the

*Christopher V. v. Kijakazi*
Civil No. 22-828-BAH
January 26, 2023
Page 3

national economy, including counter attendant (DOT[3] Code 311.477-014), cafeteria attendant (DOT Code 311.677-010), and cleaner-housekeeper (DOT Code 323.687-014).  Tr. 18–19. Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 19.

### III.   LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of correct legal standards. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether an ALJ analyzed the relevant evidence and sufficiently explained his findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff raises one overarching issue on appeal: that the ALJ erred at step two of the sequential evaluation process by failing to find that Plaintiff's hemochromatosis was a severe impairment. ECF 13-1, at 9–21.  Specifically, Plaintiff argues that the ALJ erred by: (1) failing to discuss "abnormal laboratory findings" related to Plaintiff's hemochromatosis; (2) mischaracterizing and omitting certain medical records related to Plaintiff's hemochromatosis; (3) "manipulat[ing]" citations to the medical record in this case; and (4) "cherrypicking" evidence of Plaintiff's daily activities to support his conclusion at step two. *Id.* at 9–19.  Plaintiff further argues that the ALJ's classification of his hemochromatosis as a non-severe impairment "infected subsequent steps of the sequential evaluation process, warranting remand." *Id.* at 19.

Defendant counters that substantial evidence supported the ALJ's step-two evaluation because the ALJ discussed Plaintiff's condition in detail and conducted a "fair and thorough evaluation of the record in accordance with SSA regulations."  ECF 15-1, at 7.  Defendant also contends that "[b]ecause the ALJ resolved step two in Plaintiff's favor, and proceeded through the sequential evaluation process, . . . any determination the ALJ made at step two cannot be a basis

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles.  The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Christopher V. v. Kijakazi*
Civil No. 22-828-BAH
January 26, 2023
Page 4

for remand." *Id.* at 6.

This Court's review is confined to whether the ALJ's decision is supported by substantial evidence and whether correct legal standards were applied. *Craig*, 76 F.3d at 589. As such, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Id.* While an ALJ must consider "all of the relevant medical and other evidence" in assessing a claimant's RFC, 20 C.F.R. § 404.1545, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).

An impairment is considered "severe" if it significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1522(a). At step two, "if [a claimant] do[es] not have any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities, [the SSA] will find that [the claimant] do[es] not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520(c).

Here, the ALJ supported his step-two determination with substantial evidence. Specifically, the ALJ found that the record "does not support a finding that [Plaintiff's hemochromatosis] had more than [a] minimal effect on his work-related functioning." Tr. 13. As support for his finding, the ALJ noted that Plaintiff's hemochromatosis "has existed throughout the claimant's lifetime, including when he was performing his past relevant work at the medium exertional level," and that "throughout the claimant's treatment history, his laboratory studies have revealed that he has normal liver function with normal hemoglobin and hematocrit levels." *Id.* The ALJ also cited record evidence that Plaintiff "has been successfully depleted of iron overload," had a "normal ultrasound of his liver and spleen," and "often denied experiencing joint pain, muscle weakness, or headaches, and was typically observed as being in no distress." *Id.* Thus, the ALJ concluded that because of Plaintiff's "generally normal physical examinations, normal laboratory studies, and extensive activities of daily living," Plaintiff's hemochromatosis was non-severe. *Id.*

Despite the ALJ's ample discussion, Plaintiff contends that the ALJ erred by mischaracterizing and failing to discuss record evidence related to his hemochromatosis. ECF 13-1, at 12. Specifically, Plaintiff argues that the ALJ erred by citing to "normal hemoglobin and hematocrit levels" but failing to discuss record evidence which indicates that Plaintiff had "abnormally high" iron saturation and serum ferretin levels, as well as "abnormal liver enzyme testing" and "abnormal transminases." *Id.* at 12–13. However, as Defendant correctly notes, the ALJ did take note of Plaintiff's "abnormal" laboratory findings in two ways: (1) by pointing out that Plaintiff was "successfully depleted" of a previous iron overload; and (2) by citing a medical evaluation in which Plaintiff's physician found that his hemochromatosis had improved during the course of treatment. ECF 15-1, at 7; Tr. 13. Plaintiff's contention that the ALJ only considered medical records which supported his conclusion is unavailing.

Plaintiff also contends that the ALJ mischaracterized the record by failing to discuss Plaintiff's routine phlebotomy treatments for hemochromatosis. ECF 13-1, at 14–15. But Plaintiff

*Christopher V. v. Kijakazi*
Civil No. 22-828-BAH
January 26, 2023
Page 5

does not explain why the ALJ's failure to discuss his phlebotomy treatments at step two constituted error or contributed to the ALJ's finding that Plaintiff's hemochromatosis was not severe. Plaintiff's failure to do so is fatal to his argument. *See Hancock*, 667 F.3d at 472 ("The claimant has the burden of production and proof in Steps 1–4."). Because a careful reading of the ALJ's decision reveals that the ALJ adequately considered and addressed Plaintiff's laboratory findings, Plaintiff's contention that the ALJ mischaracterized or omitted hemochromatosis-related medical evidence is without merit.

Plaintiff further argues that the ALJ erred by failing to discuss treatment records prepared by his gastroenterologist, Dr. Christopher F. Schultz, in which Plaintiff allegedly complained of "numerous symptoms, including gastrointestinal symptoms of gas and rectal bleeding." ECF 13-1, at 15. Plaintiff avers that these symptoms "would cause more than a minimal impact on [his] ability to perform basic work activities," but that, "rather than mention such material evidence[,] . . . the ALJ cited to the absence of evidence in order to classify said impairment as non-severe." *Id*. Plaintiff is correct that the ALJ's decision does not include any reference to Dr. Schultz's treatment records. But it bears repeating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Reid*, 769 F.3d at 865 (citation omitted). Further, Plaintiff's argument is partially contradicted by a November 16, 2018 assessment in which Dr. Schultz indicates that Plaintiff complained of abdominal pain and gas, but also "[d]enie[d] abdominal swelling, change in bowel habits, . . . [and] rectal bleeding." Tr. 469–70 (italics omitted). Plaintiff's argument related to Dr. Schultz's records is unavailing.

Plaintiff next contends that the ALJ "manipulated his citations within his step two discussion" with regard to his evaluation of Plaintiff's hemochromatosis to show that Plaintiff "had no physical complaints." ECF 13-1, at 16–17. But the ALJ's opinion contains no representation that Plaintiff did not have physical complaints. While the ALJ noted that Plaintiff "often denied experiencing joint pain, muscle weakness, or headaches," he also noted that Plaintiff "alleg[ed] . . . discomfort and fatigue." Tr. 13. This argument is also unpersuasive.

Lastly, Plaintiff contends that the ALJ mischaracterized record evidence related to his daily activities by "cherrypicking" evidence from Plaintiff's Function Reports. ECF 13-1, at 17–18. To be sure, the ALJ found that evidence of Plaintiff's "extensive activities of daily living [did] not support a finding that" his hemochromatosis had "more than a minimal effect on his work-related functioning." Tr. 13. Nonetheless, the ALJ also considered evidence within the Function Reports which was favorable to Plaintiff. *See, e.g.*, Tr. 15 ("In his Function Report, the claimant alleged that the pain in his eye results in significant headaches, which limit his ability to sleep."). Indeed, while Plaintiff disagrees with the ALJ's analysis of his Function Reports, he does not argue that the ALJ failed to consider the reports as a whole. Plaintiff's argument amounts to a request to reweigh the evidence. However, "[t]his court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fisk v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Given this, Plaintiff's argument that the ALJ mischaracterized these reports is without merit.

*Christopher V. v. Kijakazi*
Civil No. 22-828-BAH
January 26, 2023
Page 6

In sum, the Court is satisfied that the ALJ's step-two conclusions were supported by substantial evidence. Because I find that the ALJ's classification of Plaintiff's hemochromatosis was supported by substantial evidence, I do not reach Plaintiff's argument that the ALJ's failure to classify his hemochromatosis as severe "infected subsequent steps of the sequential evaluation process, warranting remand." ECF 13-1, at 19.

## V.   <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 13, is DENIED and Defendant's motion for summary judgment, ECF 15, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge